# 23-6724-CR

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

———➤———

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

CARL ANDREWS, a/k/a Day, a/k/a Dashawn, a/k/a 91454-053,

*Defendant-Appellant.*

—————————

*On Appeal from the United States District Court*
*for the Eastern District of New York*

## BRIEF FOR DEFENDANT-APPELLANT

LAW OFFICE OF JAMES M. BRANDEN
*Attorney for Defendant-Appellant*
80 Bay Street Landing, Suite 7j
Staten Island, New York 10301
212-286-0173

**TABLE OF CONTENTS**

*Page No.*

Table of Authorities. . . . . . . . . . . . . . . . . . iii

Statement of Subject Matter and Appellate Jurisdiction. . . . . 1

Statement of the Issues Presented for Review. . . . . . . . . 2

Statement of the Case . . . . . . . . . . . . . . . . . . 2

    The Indictment and Disposition . . . . . . . . . . . . . 2

    The Trial. . . . . . . . . . . . . . . . . . . . . . 3

        The Government's Case . . . . . . . . . . . . . . 3

        The Defense Case . . . . . . . . . . . . . . . . 7

        The Verdict . . . . . . . . . . . . . . . . . . 7

    Sentencing . . . . . . . . . . . . . . . . . . . . . 7

        The Presentence Report. . . . . . . . . . . . . . 7

            Sex Trafficking. . . . . . . . . . . . . . 7

            The Sentencing Guidelines. . . . . . . . . . 9

            Mr. Andrews's Personal History . . . . . . . 10

        The Parties' Sentencing Submissions . . . . . . . 12

        The Fatico Hearing. . . . . . . . . . . . . . . 12

        The Sentencing Proceeding . . . . . . . . . . . 14

ARGUMENT

    POINT I
    EVIDENCE THAT MR. ANDREWS CONSPIRED TO
    DISTRIBUTE 28 GRAMS OR MORE OF COCAINE
    BASE WAS WOEFULLY LACKING. . . . . . . . . . . . . . 15

i

Cont'd

*Page No.*

POINT II

THE DISTRICT COURT'S REFUSAL TO PROVIDE A
MISSING WITNESS INSTRUCTION FOR THE
GOVERNMENT'S FAILURE TO CALL THE
CONFIDENTIAL INFORMANT WAS PREJUDICIAL
ERROR. . . . . . . . . . . . . . . . . . . . . . . . . 17

POINT III

THE ABOVE-GUIDELINES SENTENCE WAS
SUBSTANTIVELY UNREASONABLE . . . . . . . . . . . . . . . 20

    I.   Standard of Review . . . . . . . . . . . . . 20

    II.  Sentencing Factors to be Considered by
        the District Court . . . . . . . . . . . . . 21

    III. Discussion . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

*Page No.*

Cases

Burgess v. United States,
    440 F.2d 226 (D.C. Cir. 1970) . . . . . . . . . . . . . . 18

Gall v. United States,
    552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . 20, 21

Graves v. United States,
    150 U.S. 118 (1893) . . . . . . . . . . . . . . . . . . . 18

Jackson v. Virginia,
    443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . 15

Sullivan v. Louisiana,
    508 U.S. 275 (1993) . . . . . . . . . . . . . . . . . . . 15

United States v. Allen,
    127 F.3d 260 (2d Cir. 1997) . . . . . . . . . . . . . . . 15

United States v. Booker,
    543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . 20

United States v. Bryce,
    208 F.3d 346 (2d Cir. 2000) . . . . . . . . . . . . . . . 15

United States v. Caccia,
    122 F.3D 136 (2d Cir. 1997) . . . . . . . . . . . . . . . 18

United States v. D'Amato,
    39 F.3d 1249 (2d Cir. 1994) . . . . . . . . . . . . . . . 15

United States v. Ebbers,
    458 F.3d 110 (2d Cir. 2006) . . . . . . . . . . . . . . . 18

United States v. Erb,
    543 F.2d 438 (2d Cir. 1976) . . . . . . . . . . . . . . . 18

United States v. Jackson,
    257 F.2d 41 (3d Cir. 1958) . . . . . . . . . . . . . . . 18

United States v. Leslie,
    103 F.3d 1093 (2d Cir. 1997) . . . . . . . . . . . . . . 15

United States v. Park,
    758 F.3d 193 (2d Cir. 2014) . . . . . . . . . . . . . . . 20

iii

Cont'd

*Page No.*

<u>United States</u> v. <u>Pirgousis</u>,
    290 Fed.Appx. 388 (2d Cir. 2008) . . . . . . . . . . . 20

<u>United States</u> v. <u>Rodriguez</u>,
    392 F.3d 539 (2d Cir. 2004). . . . . . . . . . . . . . 15

<u>United States</u> v. <u>Rollins</u>,
    487 F.2d 409 (2d Cir. 1973). . . . . . . . . . . . . . 18

<u>United States</u> v. <u>Sirois</u>,
    87 F.3d 34 (2d Cir. 1996). . . . . . . . . . . . . . . 15

<u>United States</u> v. <u>Verkhoglyad</u>,
    516 F.3d 122 (2d Cir. 2008). . . . . . . . . . . . . . 20

<u>United States</u> v. <u>Zhou</u>,
    428 F.3d 361 (2d Cir. 2005). . . . . . . . . . . . . . 15

<u>Federal Statutes</u>

18 U.S.C. §371. . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §1591 . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §1592 . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §1594 . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §3231 . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §3553(a). . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. §3742(a). . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. §841(b)(1)(B) . . . . . . . . . . . . . . . . 1, 2

21 U.S.C. §846. . . . . . . . . . . . . . . . . . . . . 1, 2

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §2106 . . . . . . . . . . . . . . . . . . . . . 1

Cont'd

*Page No.*

<u>Federal Rules of Procedure</u>

Fed.R.App.P. 4(b) . . . . . . . . . . . . . . . . . . . . 1

<u>Sentencing Guidelines</u>

USSG §2D1.1(b)(12). . . . . . . . . . . . . . . . . . . 13

USSG §3C1.1 . . . . . . . . . . . . . . . . . . . . . . 14

USSG §5K2.21. . . . . . . . . . . . . . . . . . . . . . 10

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
----------------------------------------x

UNITED STATES OF AMERICA,

              Appellee,                    Docket No. 23-6724

      -against-

CARL ANDREWS,

              Defendant-Appellant.

----------------------------------------x

### BRIEF FOR APPELLANT CARL ANDREWS

### STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Subject matter jurisdiction in the district court was conferred by 18 U.S.C. §3231, granting original and exclusive jurisdiction of all offenses against the United States. Appellant was convicted of violating such laws, to wit, 21 U.S.C. §§846/841(B)(1)(B) (A. 190-96).[1] A notice of appeal was timely filed (A. 197). Jurisdiction is invoked in this Court pursuant to 18 U.S.C. §3742(a) and 28 U.S.C. §§1291 and 2106, and Rule 4(b) of the Federal Rules of Appellate Procedure.

---

[1] Numbers in parentheses following "A." refer to pages from the Appendix filed herewith. Numbers in parentheses without prefix refer to pages from the transcript of the trial. Numbers in parentheses following "F." refer to pages from the Fatico hearing transcript. Last, numbers in parentheses following "PSR. ¶" refer to paragraphs from the presentence report, filed separately.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.   Whether evidence that Mr. Andrews conspired to distribute 28 grams or more of cocaine base was woefully lacking.

2.   Whether the district court's refusal to provide a missing witness instruction for the government's failure to call the confidential informant was prejudicial error.

3.   Whether the above-guidelines sentence was substantively unreasonable.

## STATEMENT OF THE CASE

The Indictment and Disposition

The Indictment (EDNY No. 20-546 (EB)) contained the following five counts: 1) conspiracy to commit sex trafficking by force, fraud or coercion, in violation of 18 U.S.C. §§1594(c), 1591(a)(1), (a)(2) and (b); 2) sex trafficking by force, fraud or coercion, in violation of 18 U.S.C. §§1591(a), 1591(b)(1) and 1594(a); 3) conspiracy to violate the travel act, in violation of 18 U.S.C. §§371, 1952(a); 4) travel act, in violation of 18 U.S.C. §1952(a)(3), and; 5) narcotics conspiracy, in violation of 21 U.S.C. §§846, 841(b)(1)(B) (A. 21-29).  Counts 1-4 were alleged to have been committed between March and May 2018, and count 5 was alleged to have been committed between 2017 and February 2019 (A. 21-29).  Count 5 was severed and tried before a jury.  Mr. Andrews was found guilty.  At sentencing, on the government's motion,

2

counts 1-4 were dismissed.

<u>The Trial</u>

    <u>The Government's Case</u>

According to Detective <u>Jay</u> <u>Thomas</u> of the Suffolk County Police Department (SCPD), on July 16 and 19, and August 1, 2018, a confidential informant (CI) working under Thomas's direction, made three cocaine purchases from Mr. Andrews and Geraldine Faustin (41). On July 16, the transaction took place at the ShopRite shopping center on Route 109 in Babylon, on Long Island (48, 107). Thomas and the CI waited in an undercover vehicle (52-54). The CI called Mr. Andrews to set up a narcotics purchase (50). When Faustin arrived in a white Lexus, the CI approached on foot, handed her $140 and she gave him narcotics (54). The CI returned to the undercover vehicle and gave the narcotics to Thomas (54). The same events took place on July 19 (62-64). The same events took place on August 1, except that Faustin and Mr. Andrews arrived in the lot in a black Mercedes and the CI purchased $200 worth of narcotics from Mr. Andrews (68-70, 75).[2]

The CI and Thomas attempted another buy on August 28 but Mr. Andrews "was able to point out" Thomas's back-up unit in a gray BMW

---

[2]

Thomas audio-videotaped these transactions from inside his vehicle (46). Twice during the tapings, the camera was upside down facing the sky, not the transaction (89, 94, 102). The camera was not used to record the CI calling Mr. Andrews or Thomas's search of the CI to make sure he did not have drugs on him when he left the car (92, 101).

(78-79).

Matthew Dinizio was a forensic scientist at the Suffolk County Crime Lab (113). Dinizio tested the narcotics purchased by the CI. The July 16 buy contained .69 grams of cocaine base and .65 grams of cocaine powder (119). The July 19 buy contained .70 grams of cocaine base and .69 grams of cocaine powder (120-21). Last, the August 1 buy contained .76 grams of cocaine base and .65 grams of cocaine powder (122-23).

Geraldine Faustin met Mr. Andrews in October 2016 (145, 186). They started dating not long thereafter and continued for two years (146). At the end of 2017, Mr. Andrews told Faustin that he needed money and would start selling cocaine (147). Together they sold cocaine, either from her residence, his residence, or delivered by her in a white Lexus or by him in a black Mercedes in a ShopRite parking lot or to clients' homes (147, 152, 171, 194).

From January through March 2018, when Mr. Andrews stayed with her in a neighborhood known as Clair Court, he sold cocaine, 90% of which was cocaine base, five days a week, twice a day from the residence (152-53, 186). Faustin grew uncomfortable with that and suggested that he sell cocaine from the nearby ShopRite parking lot (155). They sold cocaine there, again 90% of the sales were cocaine base, from March through July 2018 (157, 193). During that time period, Faustin and Mr. Andrews sold cocaine to Jillian Greener (162, 194-95). Greener also sold cocaine on behalf of Mr.

4

Andrews (162).

Faustin and Mr. Andrews also sold cocaine in 2018 from his residence in Bay Shore (164, 171). Mr. Andrews relocated in January 2019 and he and Faustin continued to sell cocaine from his new residence in Smithtown (174, 177).

Faustin was arrested on February 29, 2019 and later convicted of distribution of cocaine and sentenced to two years' imprisonment (144, 146, 196-97). At the time of her testimony, she was just weeks away from beginning said term (145, 186). She was hoping that her testimony at Mr. Andrews's trial would allow her to avoid the term of imprisonment (175).[3]

Around midnight, on April 6, 2018, Police Officer <u>Andrea</u> <u>Kess</u>, of the East Hampton Police Department, noticed a white Lexus idling in the driveway of a business property closed for the season (215). Kess pulled up behind the Lexus, exited her patrol car and approached (215-16, 224). There were two women inside the Lexus, Faustin, as owner and driver, and a passenger who appeared to be "under the influence" (217). The passenger said that she did not have ID, but her name was Samantha Venezuela (217). Subsequently, however, when she opened her purse to better establish that she did not have ID, Kess was able to view a pill bottle with the name Jillian Greener (218). The passenger admitted that she had lied

---

[3]

Faustin admitted that she communicated directly and through a third party with Mr. Andrews in violation of her release conditions (201-07).

about her name, that she was Greener and that there was a warrant for her arrest (219). When Kess asked why Greener repeatedly touched her chest, Greener said "because I have crack pipes in my bra" (219). Kess took the three crack pipes into custody, one of which was later found to contain cocaine base residue (220-21). Greener was arrested (222).

Jillian Greener testified pursuant to a non-prosecution agreement (288).[4] During March through May 2018, Greener was addicted to cocaine base and at times suffered from hallucinations and sleeplessness (262, 326-27, 336, 338). She purchased it from Mr. Andrews or Faustin (262, 271). During this period, Mr. Andrews or Faustin supplied Greener with half a gram up to a gram 50 to 70 times (272, 321). During this period, Greener also sold 3.5 grams (known as an "8-ball") of cocaine 20 or 30 times, mostly cocaine base, for Mr. Andrews (278). On one occasion, Greener observed Mr. Andrews in his house cooking a rock of cocaine base that she estimated weighed 50 grams (281, 290).

Greener recalled her arrest in keeping with Kess's testimony (284, 304).

Greener acknowledged that she had committed a number of criminal acts including: shoplifting, myriad drug possessions and sales, aiding and abetting burglary, assault, and weapon possession

---

[4]

As part of that agreement, Greener got "coverage" for prostitution (289). Greener violated the agreement on one occasion by purchasing and using a bag of heroin (289-90, 331).

(294-303, 311-12).

The parties stipulated that between March and May 2018, Mr. Andrews and Faustin communicated by phone and text with Greener frequently and that between March 2018 and February 2019 Mr. Andrews communicated by phone and text with Faustin frequently (350).

Robert Stueber was a Detective with the narcotics unit of the SCPD (352-53). Common slang terms for cocaine base were "hard, boy and rock" and for cocaine powder "soft" and "girl" (365). Between 2017 and 2019, a gram of cocaine base sold for approximately $100 a gram in Suffolk County, powder cocaine sold for half that (366-67).

### The Defense Case

The defense did not present a case.

### The Verdict

Mr. Andrews was found guilty (506-08).

## Sentencing

### The Presentence Report

#### Sex Trafficking

In March 2018, Greener contemplated prostitution and asked Franklyn Francisco if he knew someone who could "help." Francisco took pictures of her and forwarded them to Mr. Andrews. Later that day, Greener, using Francisco's cellular telephone, spoke with Mr. Andrews and they agreed that he would get 60% of her earnings (PSR.

¶15).  Still later that day, Greener met with Mr. Andrews and one Lorenzo Randall at Mr. Andrew's residence in Brentwood.  Randall and Greener uploaded an advertisement in Backpage.com and within seconds she had many requests for sex.  Mr. Andrews gave her cocaine base (PSR. ¶16).

Randall and Mr. Andrews took Greener to a hotel room in Bay Shore and gave her additional cocaine base.  For the next two weeks, Greener had sex with three to six clients per day (PSR. ¶17).  Mr. Andrews stood by either in the lobby or the parking lot and after each session he collected all of Greener's earnings, noting that he had paid for the room and had been giving her cocaine base (PSR. ¶¶17-18).

At one point, officers from the SCPD searched Greener's room looking for a missing person.  Greener told Mr. Andrews that she no longer felt comfortable at that location (PSR. ¶20).  Mr. Andrews and Faustin relocated her to other local hotels and drove her to "dates" (PSR. ¶21).

Greener worked as a prostitute for three months and all proceeds were turned over to Mr. Andrews.  Greener was remunerated with cocaine base only if she met daily earnings goals set by Mr. Andrews.  When she did not, Mr. Andrews grew angry and ignored her text messages requesting food or other necessities, and, of course, she experienced withdrawal symptoms (PSR. ¶22).  Mr. Andrews also tried to regulate Greener's sleep so that she did not "miss dates."

Greener estimated that at least one day per week she was sleepless and that she was sleepless for one sustained period of approximately 10 days (PSR. ¶23).

<u>The Sentencing Guidelines</u>

The Office of Probation set the following Guidelines Calculation: base offense level 28 (§2D1.1(c)(6)), +2 for maintenance of a stash house (§2D1.1(b)(12)), +2 for role as organizer and manager (§3B1.1(c)), +2 criminal conduct engaged in as a livelihood (§2D1.1(15)(E)) resulting in a total offense level of 34 (PSR. Add'm ¶¶31-39).

Mr. Andrews had a lengthy criminal history (see below with regard to Mr. Andrew's personal history). Some prior convictions did not result in criminal history points, however, because Mr. Andrews was less than 18 years old at the time of commission, or the conviction was too old or too minor (PSR. ¶¶41-54). Criminal history points were awarded for the following: conspiracy in the fifth degree, an A misdemeanor, resulting in one year of custody (2 points); driving while intoxicated, a class U misdemeanor, resulting in 120 days' custody (2 points) and; aggravated unlicensed operation of a motor vehicle, a class E felony resulting in five years' probation (1 point) (PSR. ¶¶55-57). With a total of 5 criminal history points, Mr. Andrews was in criminal history category ("CHC") III (PSR. ¶¶59-60). With a total offense level of 34 and a CHC of III, the Guidelines range of imprisonment was 188

to 235 months (PSR. Add'm ¶106).  The Office of Probation noted that an upward departure pursuant to §5K2.21 based on the sex trafficking of Greener may be warranted (PSR. ¶119).

### Mr. Andrews's Personal History

Mr. Andrews was born on July 29, 1973 (PSR. ¶70).  His mother was physically abusive.  She hit him daily with extension cords or broom handles.  His father, who had been "cool," began abusing cocaine base when Mr. Andrews was 11 years old (PSR. ¶72).  Given the persistent beatings and drug use, Mr. Andrews left home when he was 13 years old.  He slept in cars, and at friends' residences when he could (PSR. ¶73).

Despite the absence of stable housing, Mr. Andrews continued to attend school though there was no clear record that he actually graduated from high school.  According to available and ascertainable records, Mr. Andrews was "classified as emotionally disturbed with identified deficits in vocabulary and comprehension."  He was placed in various specialized programs (PSR. ¶98).

During his high school years, Mr. Andrews was arrested several times for 1) selling drugs, 2) criminal trespass and 3) assault resulting in custodial terms of 90 days, 15 days and 15 days, respectively (PSR. ¶¶41-43).

In his 20s, Mr. Andrews was arrested and convicted seven more times for: facilitation (theft), resisting arrest, possession with

intent to distribute cocaine base, criminal contempt, grand larceny, harassment, and assault resulting in custodial terms of 90 days, 75 days, 30 days, 90 days, 1-3 years, time served, and no time on the assault, respectively (PSR. ¶¶44-50). In his 30s, there were six additional arrests and convictions, five misdemeanors and one felony for aggravated unlicensed operation of a motor vehicle (PSR. ¶¶51-57).

Without dates or specifics as to length of employment or salary, Mr. Andrews reported to the Office of Probation that he had previously been employed with FedEx, UPS, RPS, various moving companies, Window Rama and an orthotic shoe manufacturer. He also said that in 2012, he worked as a barber (PSR. ¶101). He did not provide any details as to employment from 2013 on (PSR. ¶100).

Soon after high school, in 1991, Mr. Andrews married Adrianne Walker and together they had six children (and Mr. Andrews adopted a child of Ms. Walker's from a prior relationship). The marriage "was fraught with 'cheating, arguing and fighting.'" The couple separated in 2010 (PSR. ¶75). Over the course of this marriage, Mr. Andrews had sexual/romantic relationships with four other women, producing an additional eight children (PSR. ¶¶74, 76-80).

Mr. Andrews has suffered from depression and anxiety "for a long time" (PSR. ¶89). While detained (51 months by the time of sentencing), Mr. Andrews was prescribed Trazadone to help him sleep and Remeron, an antidepressant (PSR. ¶90). He suffered only one

11

disciplinary infraction, for possession of a telephone (PSR. ¶85).

<u>The Parties' Sentencing Submissions</u>

Mr. Andrews argued that the court should apply the base offense level as to powder cocaine, not cocaine base, as per pending legislation (A. 31). 196 grams of powder cocaine would result in a base offense level of 16 (A. 31). Mr. Andrews also argued that the available evidence did not support the government's contention that 196 grams were distributed (A. 33-35). In addition, Mr. Andrews argued that evidence of sex trafficking was not sufficiently proven and in any even not relevant conduct and should not therefore be considered under the Guidelines or as part of Mr. Andrew's history under 18 U.S.C. §3553(a)(1) (A. 42-53). Other arguments were presented for a below Guidelines sentence under the §3553(a) factors (A. 53-70).

The government sought a sentence of 180 months, principally because of "Andrews's deeply inhumane sex trafficking" of Greener (A. 73).

<u>The Fatico Hearing</u>

Mr. Andrews testified at a <u>Fatico</u> hearing. "Francisco" called Mr. Andrews on March 6, 2018, and stated that he knew of a woman that wanted help to prostitute so that she could buy drugs (F. 15). Mr. Andrews asked that Francisco send him a photograph of the woman (F. 16). Later that day, Mr. Andrews and Faustin visited Francisco at his residence in Brentwood (F. 15, 17). There they met Greener

and took her back to Mr. Andrews's residence at 1726 Central (F. 17). Lorenzo Randall was there at the time (F. 17). Greener asked for money to turn her cellular telephone on and to secure a hotel room, all for the purpose of prostitution (F. 19). Then, presumably after the phone bill was paid and the room secured, and after she posted an advertisement on Backpage, she called Mr. Andrews for cocaine base (F. 19-20). Mr. Andrews complied but he otherwise did not benefit from her prostitution (F. 20-21, 24). He did not get a cut of her profits, he did not demand an accounting of her sex acts or payments (F. 23, 37). Because he was not her pimp, he admonished her when she called him "Daddy" (F. 63).

"[A]s time went on," Greener asked for more than cocaine base. She asked that Mr. Andrews or Faustin get her food and take her shopping because she did not have a car (F. 22, 69).

Mr. Andrews met with Greener approximately 15 times from March 6 to early April, 2018 (F. 27). Her "Backpage was shut down" then and she no longer had money to pay for drugs (F. 27). Greener called him again in May but he ignored her calls as he did not have any supply (F. 27).

As to the proposed §2D1.1(b)(12) enhancement for maintenance of a stash house, Mr. Andrews said that he did not store drugs, possess drugs, or sell drugs from the 1726 Central residence (F. 41). He resided there for six years at times with some of his children and Faustin, and he kept it clean with nice furniture (F.

13

40). As to 11 Claire Court, where Faustin resided when they met, Mr. Andrews visited Faustin there but he did not live there or store drugs or distribute drugs there (F. 42).

The government contended that Mr. Andrew's testimony at the Fatico hearing was cause for an obstruction of justice enhancement as per USSG §3C1.1 (F. 99).

The Sentencing Proceeding

The court determined the following Guidelines calculation: base offense level 18 (more than 200 grams of powder cocaine); +2 for maintenance of a stash house; +2 for role; +2 for criminal livelihood, and; +2 for obstruction of justice (perjury at the Fatico hearing) (A. 113-20). At CHC III, the Guidelines range of imprisonment was 78 - 97 months (A. 120). After hearing from counsel for both parties and Mr. Andrews himself, the court sentenced Mr. Andrews to a term of imprisonment of 115 months, a term of supervised release of 48 months, and a special assessment of $100 (A. 179). As to the upward variance as to the term of imprisonment, the court cited four supporting factors: 1) use of the powder cocaine Guideline under-represented the criminality at issue because the distribution of cocaine base played an important role given that Greener was a cocaine base addict; 2) Mr. Andrews CHC understated the nature and severity of the criminal history; 3) lack of remorse, and; 4) "profiteering from [Greener's] prostitution" and "exploiting narcotics addiction to incentivize

14

sex work" (A. 171-75).   On the government's motion, the court dismissed counts 1-4 (A. 181).


### ARGUMENT

POINT I

EVIDENCE THAT MR. ANDREWS CONSPIRED
TO DISTRIBUTE 28 GRAMS OR MORE OF
COCAINE BASE WAS WOEFULLY LACKING

This Court reviews sufficiency of evidence determinations *de novo*.  See United States v. Leslie, 103 F.3d 1093, 1100 (2d Cir. 1997); United States v. Sirois, 87 F.3d 34, 38 (2d Cir. 1996).  A conviction will be affirmed if, viewing the evidence in the light most favorable to the prosecution, the reviewing court finds that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Zhou, 428 F.3d 361, 369-70 (2d Cir. 2005); United States v. Rodriguez, 392 F.3d 539, 544 (2d Cir. 2004); United States v. Bryce, 208 F.3d 346 (2d Cir. 2000); United States v. Allen, 127 F.3d 260, 265-66 (2d Cir. 1997). It "would not satisfy the [Constitution, however,] to have a jury determine that the defendant is *probably* guilty" [Sullivan v. Louisiana, 508 U.S. 275, 278 (1993)] or to have a conviction rest on mere speculation or conjecture.  See United States v. D'Amato, 39 F.3d 1249, 1256 (2d Cir. 1994).

Here, the government's evidence at trial did not establish

15

that Mr. Andrews conspired to distribute and to possess with intent to distribute 28 grams or more of cocaine base. This was so, principally, because the government failed to call any reliable witness as to weight.

While the government called Detective Jay Thomas as undercover supervisor to the buys of the confidential informant (CI), it did not call the CI. Thomas's testimony lacked the compelling nature of the direct evidence the CI could have provided. In any event, there were only three buys and according to Matthew Dinizio, the forensic scientist, the total weight of cocaine base was just 2.15 grams.

While Geraldine Faustin testified that Mr. Andrews, her then boyfriend, distributed cocaine over the course of about 14 months, and that 90% of it was cocaine base, at no time was she specific as to overall weight. She said vaguely that there were "many" sales and most ranged from .2 to .6 grams. (149, 154, 157, 191). Simply put, these facts did not provide an adequate basis to extrapolate. Any total weight figure would depend on mere speculation and conjecture. Furthermore, she testified with a vendetta against her ex-boyfriend and as a cooperating witness hoping to receive Rule 35 relief from a imminent two-year term of imprisonment. Scrutinizing her testimony with great care, it did not hold up and should be rejected in whole.

Nor did the government's final civilian witness help. Jillian

16

Greener was a hard-core addict. At the time she claimed to be distributing drugs for Mr. Andrews she was a heavy user and suffered both from hallucinations and prolonged sleeplessness, including a period of 10 days. Her ability to recall the weight of drugs Mr. Andrews pedaled was in doubt. She lacked credibility for other reasons, as well. First she was a hardened criminal, having committed shoplifting, myriad drug possessions and sales, burglary, assault and weapon possession. And, second, she testified pursuant to a non-prosecution agreement. Like Faustin, she was hoping that her testimony against Mr. Andrews would keep her out of prison. Because Greener could not likely recall the events she testified to and because she had a powerful incentive to lie, her testimony should be rejected in whole as well.

For all of the foregoing reasons, the government failed to elicit sufficient evidence that Mr. Andrews conspired to distribute 28 or more grams of cocaine base. The judgment should be vacated and count 5 should be dismissed.


POINT II

THE DISTRICT COURT'S REFUSAL TO
PROVIDE A MISSING WITNESS
INSTRUCTION FOR THE GOVERNMENT'S
FAILURE TO CALL THE CONFIDENTIAL
INFORMANT WAS PREJUDICIAL ERROR

This Court reviews a district court's refusal to provide a missing witness instruction for abuse of discretion and actual

17

prejudice.  <u>United States</u> v. <u>Ebbers</u>, 458 F.3d 110, 124 (2d Cir. 2006).

When "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction" and fails to produce such witnesses, the jury may infer that "the testimony, if produced, would be unfavorable" to that party. <u>Graves</u> v. <u>United States</u>, 150 U.S. 118, 212 (1893).  However, when witnesses are equally available to both sides, the failure to produce is open to an inference against both parties.  <u>United States</u> v. <u>Erb</u>, 543 F.2d 438, 444 (2d Cir. 1976).  In this regard, the availability of a witness depends on all the facts and circumstances bearing upon the witness's relation to the parties, rather than merely on physical presence or accessibility.  <u>United States</u> v. <u>Caccia</u>, 122 F.3d 136, 139 (2d Cir. 1997); <u>United States</u> v. <u>Rollins</u>, 487 F.2d 409 (2d Cir. 1973).  <u>See</u>, <u>e.g.</u>, <u>Burgess</u> v. <u>United States</u>, 440 F.2d 226, 232 (D.C. Cir. 1970)(informer peculiarly within government's control); <u>United States</u> v. <u>Jackson</u>, 257 F.2d 41, 43-44 (3d Cir. 1958) (government informant not equally available).

The district court abused its discretion in denying Mr. Andrews's request for a missing witness instruction and the error caused prejudice.  First, the CI possessed material information concerning the three buys in which he directly participated with Faustin and Mr. Andrews, that is, the actual hand-to-hand

exchanges. Further, the CI could have "elucidate[d] the transactions" as he was in a position to specify how much money he provided and what quantities he received in return, details that were not caught on the audio-videotape. The CI could also testify about any non-verbal communication during the transactions that was not caught on the audio-visual record. By contrast, the undercover, Jay Thomas, was at a distinct remove and necessarily lacked knowledge of any details not caught on audio-videotape.

Second, the CI was peculiarly within the government's control. Indeed, defense counsel said that he had not the "foggiest idea" who the CI was or how to reach him (253), and, in any event, the CI was obviously a government functionary.

And third, the refusal to give the charge was prejudicial. Had the district court provided the instruction, the jury was to infer that the CI's testimony would be unfavorable to the government's case. This in turn would mean that the CI's testimony would have discredited Thomas's testimony and the audio-video tapes, leaving only the testimony of two cooperating witnesses, both of whom had strong motives to falsify (see POINT I). Thus, in the absence of creditable testimony from law enforcement, the jury may well have acquitted Mr. Andrews.

For the foregoing reasons, the judgment of conviction should be reversed and a new trial ordered.

19

POINT III

THE ABOVE-GUIDELINES SENTENCE WAS
SUBSTANTIVELY UNREASONABLE

I.   Standard of Review

This Court reviews a district court's sentencing decisions for reasonableness.  United States v. Booker, 543 U.S. 220, 264 (2005). Reasonableness has two components, 1) procedural reasonableness and 2) substantive reasonableness.  This POINT concerns substantive reasonableness only.

As to substantive reasonableness this Court must determine whether the sentence imposed was reasonable taking into account all of the §3553(a) factors.  See United States v. Verkhoglyad, 516 F.3d 122, 127 (2d Cir. 2008).  Reversal will result where: 1) a sentence lacks a proper basis in the record; 2) a trial judge's assessment of the evidence leaves the reviewing court with a definite and firm conviction that a mistake has been committed, or 3) the reviewing court has reached the informed judgment that a sentence is otherwise unsupportable as a matter of law.  See United States v. Park, 758 F.3d 193, 200-01 (2d Cir. 2014).

All sentences, "whether inside or outside the guidelines range" must be reviewed for abuse of discretion.  Gall v. United States, 552 U.S. 38, 50 (2007).  See United States v. Pirgousis, 290 Fed.Appx. 388 *2 (2d Cir. 2008).  In doing so, this Court should take into account the "totality of the circumstances."  Id.

20

II.  <u>Sentencing Factors to be Considered by the District Court</u>

Pursuant to 18 U.S.C. §3553(a)(2), the lower court was required to "impose a sentence sufficient, but not greater than necessary" to comply with generally recognized purposes of sentencing, including the need:

A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

B)    to afford adequate deterrence to criminal conduct;

C)    to protect the public from further crimes of the defendant; and

D)    to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Among other things, the sentencing court was also required to consider: the nature and circumstances of the offense, the history and characteristics of the defendant, and the applicable sentencing range as established by the now-advisory sentencing guidelines, which is the "starting point and initial bench mark" for every sentencing.  18 U.S.C. §§3553(a)(1), (a)(4); <u>Gall</u> v. <u>United States</u>, <u>supra</u>, 552 U.S. at 49-50.

III. <u>Discussion</u>

The district court found that Mr. Andrews was in CHC III and had a total offense level (TOL) of 26, resulting in a range of imprisonment of 78 - 97 months.  It went on to impose an upward

variance resulting in a term of imprisonment of 115 months, slightly more than three years above the Guidelines minimum and a year and one-half above the maximum. It did so for specious reasons, addressed *seriatim*.

One, it found that the base offense level of 18, using the powder cocaine as opposed to crack cocaine Guideline, which the parties agreed to in light of DOJ policy, was too lenient because Greener's addiction to cocaine base played an important part in Mr. Andrews's criminality. This bump-up was illogical. As with all cocaine base street sellers, clients are typically addicts and many of the female clients are engaged in prostitution to support their habits. Mr. Andrews should not be singled out for more punitive treatment.

Two, the district court was wrongly of the view that CHC III under-represented his overall criminal history. To be sure, a number of offenses did not result in criminal history points, but they did not do so because they were exceedingly low level, too old or Mr. Andrews was less than 18 at the time of the offense. The vast majority of these sentences were measured in days, time served or no jail. Further, a CHC of III, at TOL 26, added 15-19 months onto his sentence so the Guidelines range had effectively addressed his recidivism. The piling on in this regard was inexplicable.

Three, lack of remorse should never qualify for an upward variance. The district court's reliance on this factor conflicted

22

with Mr. Andrews's right to trial and appeal. Further, obviously, in proceeding to trial, Mr. Andrews lost three levels under the Guidelines that he could have achieved for acceptance of responsibility so he had already been punished for his remorselessness. Again, the piling on was inexplicable.

Four, and finally, profiteering from Greener's sex work and exploiting her addiction, even if true, should not have factored into the sentence. Greener was a long-time addict and a wanna-be prostitute before she met Mr. Andrews. He was not a predator and their relationship was short, two to three months in all. He did not have sex with her or hurt her physically. It was from her perspective, at times, a loving partnership. Furthermore, the district court had already enhanced the sentence based on Greener's crack addiction (see "Two" above), so the addiction (also the basis of her prostitution) should not have been counted again.

For the foregoing reasons, the significantly above-Guidelines sentence was substantively unreasonable. The matter should be remanded for resentencing.

23

**CONCLUSION**

In keeping with POINT I, the judgment of conviction should be reversed and the indictment dismissed.  Alternatively, in keeping with POINT II, the judgment of conviction should be reversed and the matter should be remanded for a new trial.  Alternatively, in keeping with POINT III, the sentence should be vacated and the matter should be remanded for resentencing.

Respectfully submitted,

JAMES M. BRANDEN, ESQ.
Attorney for Appellant
CARL ANDREWS

80 Bay Street Landing, Suite 7J
Staten Island, New York 10301
(212) 286-0173

June 26, 2024

24